IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARTIN BARRAGAN-MENDOZA,

              Petitioner,                No. CIV S-09-CV-3570 FCD CHS

      vs.

STEVE MOORE,

              Respondent.        <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

## I.  INTRODUCTION

Petitioner, Martin Barragan-Mendoza, is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is currently serving an indeterminate term of nineteen years to life following his 1990 jury conviction for second degree murder with a penalty enhancement for use of a firearm.  Here, Petitioner does not challenge the constitutionality of his conviction, but rather, the execution of his sentence and, specifically, the 2008 decision of the Board of Parole Hearings (the "Board") finding him unsuitable for parole.

## II.  ISSUE PRESENTED

Petitioner sets forth a single ground for relief in his pending petition.  Specifically, Petitioner claims that the Board's determination that he was unsuitable for parole violated Petitioner's federally protected right to due process of law.  In addition, Petitioner requests the appointment of

counsel.

### III.  FACTUAL BACKGROUND

The basic facts of Petitioner's commitment offense were summarized by the

Presiding Commissioner at Petitioner's parole hearing as follows:

> On February 10th, 1990, at 9:45 p.m., Antonio Sanchez Guizar [ ], the victim, went to a Redwood City pool hall with his brother and two nephews, and while there while the victim sat at the bar with his nephews, his brother was having a conversation with an individual later identified as Hector Mendoza, Martin Barragan-Mendoza, the inmate's cousin.  Meanwhile, the victim was approached by Pablo Oseguera [ ] , Mendoza [ ] , Barragan-Mendoza's other cousin, who pointed a gun at the victim and demanded that he accompany him to the restroom.  The victim refused and a struggle ensued.  Barragan-Mendoza stood at the rear exit of the pool hall and pointed a gun at the victim's back.  Oseguera Mendoza yelled at Barragan-Mendoza and told him to shoot him.  Barragan-Mendoza subsequently fired four shots into the victim's back.  As the victim fell to the ground, Oseguera Mendoza fired several more shots at the victim.  Barragan-Mendoza and his cousins ran out of the bar and escaped.  Barragan-Mendoza was arrested on April 30th, 1990, at a bar in San Jose, California.  The shooting is believed to be the result of a long-standing family feud emanating out of Chila [ ], Mexico, and spanning over many years.  The original reason for the feud is no longer known; however, there is a long history of revenge, retaliation, and murders that have left numerous victims and innocent individuals injured or dead.

(Pet. Ex. C at 10-11).

Following a jury trial, Petitioner was found guilty of second degree murder with a

penalty enhancement for use of a firearm.  Petitioner was sentenced to nineteen years to life

imprisonment with the possibility of parole.  His minimum eligible parole date passed on August 24,

1992.  On June 20, 2008, Petitioner appeared before the Board of Parole Hearings for his third

subsequent (fourth overall) parole consideration hearing.  After considering various positive and

negative suitability factors, the panel determined that Petitioner would pose an unreasonable risk of

danger to society if released, and concluded that he was not suitable for parole.  Petitioner sought

habeas corpus relief from this decision in the California Court of Appeal, First Appellate District.

The court denied his petition on  June 10, 2009, finding that the Board's decision was supported by

1   some evidence that Petitioner remained an unreasonable risk of danger to society.  The California

2   Supreme Court denied relief on September 30, 2009.  Petitioner filed this federal petition for writ of

3   habeas corpus on December 28, 2009.  Respondent filed an answer on March 9, 2010 and Petitioner

4   filed his travers on March 11, 2010.

5                    **IV.  APPLICABLE STANDARD OF HABEAS CORPUS REVIEW**

6            This case is governed by the provisions of the Antiterrorism and Effective Death

7   Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after

8   its enactment on April 24, 1996.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *Jeffries v. Wood*, 114

9   F.3d 1484, 1499 (9th Cir. 1997).  Under AEDPA, an application for a writ of habeas corpus by a

10  person in custody under a judgment of a state court may be granted only for violations of the

11  Constitution or laws of the United States.  28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375

12  n. 7 (2000).  Federal habeas corpus relief is not available for any claim decided on the merits in state

13  court proceedings unless the state court's adjudication of the claim:

14          (1) resulted in a decision that was contrary to, or involved an
            unreasonable application of, clearly established federal law, as
15          determined by the Supreme Court of the United States; or

16          (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the
17          State court proceeding.

18  28 U.S.C. § 2254(d).  *See also Penry v. Johnson*, 531 U.S. 782, 792-93 (2001); *Williams v. Taylor*,

19  529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).  This court

20  looks to the last reasoned state court decision in determining whether the law applied to a particular

21  claim by the state courts was contrary to the law set forth in the cases of the United States Supreme

22  Court or whether an unreasonable application of such law has occurred.  *Avila v. Galaza*, 297 F.3d

23  911, 918 (9th Cir. 2002).

24                                    **V.  DISCUSSION**

25  **A.  Due Process in the California Parole Context**

26          Petitioner alleges that the Board's 2008 determination that he remained unsuitable for

                                            3

parole violated his federal right to due process of law.  Petitioner contends that he is a fully rehabilitated prisoner and that his commitment offense was a "single episode of aberrant behavior." (Pet. at 9).  Thus, Petitioner argues that the Board's unsuitability determination was not supported by any evidence in the record that he would pose an unreasonable risk of danger to society if released from prison.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits state action that "deprive[s] a person of life, liberty or property without due process of law."  U.S. CONST. AMEND. XIV, § 2.  A person alleging a due process violation must first demonstrate that he or she was deprived of a protected liberty or property interest, and then show that the procedures attendant upon the deprivation were not constitutionally sufficient.  *Ky. Dep't. Of Corrs. v. Thompson*, 490 U.S. 454, 459-60 (1989); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).

A protected liberty interest may arise from either the Due Process Clause itself or from state laws.  *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987).   In the context of parole,

> [t]here is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners.  [ ].  When, however, a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication – and federal courts will review the application of those constitutionally required procedures.

*Swarthout v. Cooke*, slip. op. at 4 (U.S. January 24, 2011).  *See also Greenholtz v. Inmates of Neb. Penal*, 442 U.S. 1, 7 (1979) ("There is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.").  Here, because California's statutory scheme governing parole "uses mandatory language, [it] 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, thereby giving rise to a constitutionally protected liberty interest."  *McQuillion*, 306 F.3d at 901 (quoting *Greenholtz*, 442 U.S. at 12).  *See also Swarthout*, slip. op. at 4 ("[T]he Ninth Circuit held that California law creates a liberty interest in parole . . . .  While we have no need to review that holding here, it is a reasonable

1    application of our cases." (internal citations omitted)).

2          Despite the existence of this liberty interest, it is well established that inmates are not

3    guaranteed the "full panoply of rights" during a parole suitability hearing as are normally afforded

4    to criminal defendants under the Due Process Clause. *Swarthout*, slip op. at 4 ("In the context of

5    parole, we have held that the procedures required are minimal."). *See also Pedro v. Or. Parole Bd.*,

6    825 F.2d 1396, 1398-99 (9th Cir. 1987).  The United States Supreme Court has held that the

7    protection afforded by the federal due process clause to California parole decisions consists solely

8    of the "minimal" procedural requirements set forth in *Greenholtz*, specifically, "an opportunity to be

9    heard and . . . a statement of the reasons why parole was denied." *Id*. at 4-5. *See also Greenholtz*,

10   442 U.S. at 16.

11         In addition, as a matter of state constitutional law, denial of parole to California

12   inmates must be supported by "some evidence" demonstrating that the inmate poses an unreasonable

13   risk of danger to society. *Hayward v. Marshall*, 603 F.3d 546, at 562 (citing *In re Rosenkrantz*, 29

14   Cal.4th 616 (2002)). *See also In re Lawrence*, 44 Cal.4th at 1191 (recognizing the denial of parole

15   must be supported by "some evidence" that an inmate "poses a current risk to public safety"); *In re*

16   *Shaputis*, 44 Cal.4th 1241, 1254 (2008) (same). However, California's "some evidence" requirement

17   is a substantive right provided by the state of California, and thus is not afforded protection by the

18   federal Due Process Clause. *Swarthout*, slip op. at 5.  Indeed, the Supreme Court has held that "[n]o

19   opinion of [theirs] supports converting California's 'some evidence' requirement into a substantive

20   federal requirement." *Id*.  Moreover, the Supreme Court has long recognized that alleged violations

21   of state law are not cognizable on federal habeas corpus review.  *Id*. at 6; *Estelle v. McGuire*, 502

22   U.S. 62, 67-68 (1991) (reiterating that "it is not the province of a federal habeas court to reexamine

23   state court determinations on state law questions"); *Smith v. Phillips*, 455 U.S. 209, 221 (1982) ("A

24   federally issued writ of habeas corpus, of course, reaches only convictions obtained in violation of

25   the United States Constitution.").

26         Here, the record reflects that Petitioner was present at his 2008 parole suitability

5

1   hearing, that he participated in the hearing, and that he was provided with the reasons for the Board's

2   determination that he was not suitable for parole.  The federal due process clause requires no more.

3   To the extent that Petitioner's claim rests on an allegation that the Board failed to follow California

4   state law or procedure because its decision is not supported by sufficient evidence, it is not

5   cognizable in a federal petition for writ of habeas corpus.  *Middleton v. Cupp*, 768 F.2d 1083, 1085

6   (9th Cir. 1986); (*Givens v. Housewright*, 786 F.2d 1378, 1381 (9th Cir. 1986).  As discussed above,

7   a writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis of some transgression

8   of federal law binding on the state courts.  *Middleton*, 768 F.2d at 1085; *Gutierrez v. Griggs*, 695

9   F.2d 1195, 1197 (9th Cir. 1983).

10          Petitioner received all process he was due at his parole hearing and is thus not entitled

11   to federal habeas corpus relief on his claim that the Board's unsuitability determination violated his

12   federal right to due process of law.

13   **B.  Appointment of Counsel**

14          Petitioner has requested the appointment of counsel.  There currently exists no

15   absolute right to appointment of counsel in habeas corpus proceedings.  *See Nevius v. Sumner*, 105

16   F.3d 453, 460 (9th Cir. 1996).  However, 18 U.S.C. § 3006A authorizes the appointment of counsel

17   at any stage of the case "if the interests of justice so require."  *See* Rule 8(c), Fed. R. Governing

18   § 2254 Cases.  In making this determination, the court evaluates the likelihood of success on the

19   merits and the ability of Petitioner to articulate his claims pro se in light of the complexity of the legal

20   issues involved.  *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir.1983).  Here, Petitioner has

21   articulated his claims reasonably well and the issues presented are not complex.  Therefore, the

22   interests of justice do not require the appointment of counsel at this time.

23                              **VI.  CONCLUSION**

24          Accordingly, IT IS RECOMMENDED that the pending petition for writ of habeas

25   corpus be denied.  These findings and recommendations are submitted to the United States District

26   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one

1  days after being served with these findings and recommendations, any party may file written

2  objections with the court and serve a copy on all parties.  Such a document should be captioned

3  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

4  shall be served and filed within seven days after service of the objections.  Failure to file objections

5  within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*,

6  158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In any objections

7  he elects to file petitioner may address whether a certificate of appealability should issue in the event

8  he elects to file an appeal from the judgment in this case.  *See* Rule 11, Federal Rules Governing

9  Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters

10  a final order adverse to the applicant).

11  DATED: April 7, 2011

12

13  CHARLENE H. SORRENTINO
   UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26